UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FIRST HARTFORD REALTY CORPORATION** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-2294** |
| **OMEGA CONTRACTORS, INC, ET AL** | **SECTION "H"(1)** |

### ORDER AND REASONS

Before the Court are four Motions for Summary Judgment (Docs. 266, 270, 271 & 273) filed by Defendants Heath Polasek ("Polasek") and Gene Hodges ("Hodges"). For the following reasons, the Motions are GRANTED IN PART.

### BACKGROUND

On December 9, 2010, First Hartford Realty Corporation ("First Hartford") hired Omega Contractors, Inc. ("Omega") to construct three CVS stores, two in Louisiana and one in Texas. The parties executed separate contracts (the "Contracts") for each store. Under the Contracts, First

1

Hartford made monthly payments to Omega. The amount of each monthly payment was based on the value of the work Omega actually performed in that particular month. In turn, Omega promised that it would use the payments to pay its laborers and subcontractors.

On May 27, 2011, Omega abandoned work at all three construction sites without first providing notice to First Hartford. First Hartford alleges that, of the more than five million dollars paid to Omega, approximately two million never reached Omega's subcontractors. Because of this, CVS was allegedly required to spend substantial amounts in order to complete the work, including: more than one million dollars to satisfy lien claims, two million dollars in additional costs associated with replacement contractors, and legal fees.

On September 13, 2011, First Hartford filed suit alleging various contractual and extra-contractual claims against Omega. First Hartford also asserted a veil-piercing claim against Defendants Polasek and Hodges. It alleges that, in the final days of Omega's corporate existence, Polasek and Hodges (the shareholders of Omega) personally directed Omega funds to discharge debts unrelated to Omega's corporate purpose but for which Polasek and Hodges were personally liable. First Hartford claims Polasek and Hodges discharged the debts using funds that were supposed to be used to pay subcontractors working on the CVS projects.

On April 10, 2013, Polasek and Hodges filed motions for summary judgement arguing that this matter should be dismissed because First Hartford had not directly sustained any damages (the "First Motions"). The Court denied the First Motions and held that Defendants' damages argument

2

was, in reality, a procedural objection to prudential standing under Rule 17. The Court dismissed the objection, finding that CVS had validly ratified this action under Rule 17. First Hartford subsequently sought, and the Court granted, leave to amend the complaint to add CVS as a plaintiff to this action. Plaintiffs' amended complaint asserts, for the most part, the same claims as the original complaint in addition to a claim that CVS was a third-party beneficiary to the Contracts.

The day after this Court issued its written reasons denying the First Motions, Polasek filed a Motion to Dismiss for lack of jurisdiction and Hodges subsequently filed a similar motion (the "Second Motions"). In the Second Motions, Defendants asserted the same arguments once rejected by the Court—that this matter should be dismissed because First Hartford had not sustained monetary damages. The Court denied the Second Motions for the same reasons as the First Motions. Defendants responded with a motion to certify the Court's judgment for immediate appeal, which the Court also denied. At a status conference held shortly thereafter, the Court told Defendants not to present the same arguments a fourth time. Despite this Court's clear instruction, Defendants filed the instant Motions which, with two exceptions, assert the same well-aged arguments previously rejected by this Court on multiple occasions.

**LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

3

material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (2012). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir. 1997). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial." *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted). "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of

evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion." *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

## LAW AND ANALYSIS

Defendants assert several arguments in support of their Motions. Defendants' arguments can be grouped into four categories: (1) First Hartford's claims should be dismissed in their entirety because First Hartford did not sustain damages; (2) CVS should be dismissed because it lacked privity with Omega and was not a third-party beneficiary to any of the contracts at issue; (3) the contracts for the construction of the two Louisiana stores are absolutely null under Louisiana law; and, (4) Plaintiffs' veil piercing claim lacks evidentiary support.

### A. Defendants' Damages Argument as to First Hartford

This argument has been raised by Defendants and rejected by the Court no less than three times. *See* Docs. 208, 242 & 243. Shortly after the Court rejected the argument for the third time,

Defendants were instructed not to raise it again. Yet Defendants again ignore a clear order of this Court. Such contumacious conduct wastes valuable judicial resources, the time of opposing counsel, and the resources of their respective clients. Therefore, Defendants' argument is rejected—for the *fourth* time.[1]

**B. Defendants' Arguments Regarding the Dismissal of CVS**

Defendants argue that CVS may not assert a breach of contract claim against them because CVS was never in privity with Omega. This argument ignores the Court's previous holding that CVS, as the real party in interest, is permitted to ratify First Hartford's breach of contract claims pursuant to Rule 17. As this Court has previously held, Defendants cannot escape liability simply because a third-party to the Contracts sustained the actual damages.

In a similar vein, Defendants argue that they are entitled to summary judgment on CVS's claims that it was a third-party beneficiary to the contracts at issue. As explained more fully below, the contracts with regard to the Louisiana stores are absolute nullities under Louisiana law. Because the factual predicate to these claims—a valid contract—fails, so too do the claims. Defendants' motion is denied as to the Texas contract.

The parties agree that Texas law governs the contract for the construction of the Texas store. Therefore the contract is interpreted according to the general principles of contract

---

[1] Defendants are advised that, should they file yet another motion asserting this same argument, they should be prepared to respond to a rule to show cause pursuant to 28 U.S.C. § 1927.

interpretation articulated by the Texas Supreme Court. *See generally Coker v. Coker*, 650 S.W. 2d 391(Tex. 1983). The Court's first task is to determine whether the contract is enforceable as written, without resort to parole evidence. *J.M. Davidson, Inc. v. Webster*, 128 S.W. 3d 223, 229 (Tex. 2003). The primary objective of this Court is to ascertain the intentions of the parties as expressed in the contract. *Lopez v. Munos, Hockema & Reed, L.L.P.*, 22 S.W. 3d 857, 861 (Tex. 2000) (citation omitted). To achieve this objective, the Court should examine the entire contract in order to "harmonize and give effect to all of its provisions so that none will be rendered meaningless." *Webster*, 128 S.W. 3d at 229 (citation omitted). A contract is unambiguous if it can be given a definite or certain legal meaning. *Id.* (citation omitted). Ambiguity does not arise because of a "simple lack of clarity," or because the parties proffer different interpretations of the contract. *Dewitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W. 3d 96, 100 (Tex. 1999) (citations omitted). Rather, a contract is ambiguous only if it is subject to two or more reasonable interpretations after applying the pertinent canons of construction. *Webster*, 128 S.W. 3d at 229 (citation omitted). If the contract is ambiguous, courts may consider parole evidence for the purpose of ascertaining the parties' intent. *David J. Sacks, P.C. v. Haden*, 266 S.W. 3d 447, 450–51 (Tex. 2008).

Texas courts generally presume that the parties to a contract bargain only for their own benefit. *Tawes v. Barnes*, 340 S.w. 3d 419, 425 (Tex. 2011). However, where there is a "clear and unequivocal expression of the contracting parties' intent to directly benefit a third party," Texas courts will permit the third-party to enforce the contract. *Id*. If a contract is clear and

unambiguous, then its construction is a question of law for the court to decide. *Id*.

Near the top of the first page of the contract for the construction of the Texas CVS store, in large print, the contract states that Omega is bound to "construct CVS store #5935, Brownsville, TX." The contract specifically states that it includes "the Agreement, if any, between the Owner and the Developer."[2] Thus, by its plain and unambiguous terms, the contract between Omega and First Hartford included, by reference, the contract between CVS and First Hartford.

Defendants argue that First Hartford's failure to include an express provision designating CVS as a third-party beneficiary precludes CVS from recovering under the contract. This argument lacks merit. The only purpose of the contract between First Hartford and Omega was the construction of a CVS retail store. Thus, the contract provided for a clear and unequivocal benefit to CVS. Because the contract is clear and unambiguous, its interpretation is a question of law for the Court to decide. *Tawes*, 340 S.W.3d at 425. Thus the Court finds, as a matter of law, that CVS is a third-party beneficiary of the Texas contract between Omega and First Hartford.

**C. The Enforceability of the Louisiana Contracts**

Defendants next argue that the contracts pertaining to the two Louisiana stores are absolute nullities under Louisiana law. Defendants argue that, with regard to the two Louisiana CVS stores, First Hartford was acting as general contractor despite the fact that it did not hold a

---

[2] "Owner" refers to CVS and "Developer" refers to First Hartford.

Louisiana contractor's license. Defendants correctly note that any person or entity acting as a general contractor in Louisiana must posses a valid Louisiana contractor's license. *See* La. Rev. Stat. § 37:2160. Therefore, since the contracts with regard to the two Louisiana stores required First Hartford to violate Louisiana law, Defendants ask this Court to declare the contracts absolutely null.

The parties agree that Louisiana law governs the contracts pertaining to the two Louisiana stores. When a contract violates a rule of public order the contract is absolutely null under Louisiana law. *Baker v. Maclay Properties Co.*, 648 So. 2d 888, 895 (La. 1995) (citing La. Civ. Code art. 2030). One example of an absolutely null contract is a one which derogates from a law enacted for the protection of the public. *Baker*. 648 So. 2d at 895–96. "An absolutely null contract . . . is deemed never to have existed." La. Civ. Code art. 2033.

The argument advanced by Defendants has been addressed numerous time by both the state courts of Louisiana and the Fifth Circuit. Every court to consider the argument has held that the failure of a contractor to obtain a contractor's license renders a construction contract absolutely null. *See Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 257 (5th Cir. 2009) (collecting cases). As a result, the Court's analysis with regard to Defendants' argument is relatively simple. If the contracts for the two Louisiana stores required First Hartford to act as a general contractor then the contracts are absolute nullities.[3]

---

[3] First Hartford admits that it did not hold a valid Louisiana contractor's license during the construction of the two stores.

9

La. Rev. Stat. § 37:2150.1(4)(a) defines the term contractor as follows:

> "Contractor" means any person who undertakes to, attempts to, or submits a price or bid or offers to construct, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or furnishing labor, or furnishing labor together with material or equipment, or installing the same for any building, highway, road, railroad, sewer, grading, excavation, pipeline, public utility structure, project development, housing, or housing development . . .

This statute presents a very broad definition of contractor. Under this definition, any person who supervises, directs, or in any manner assumes charge of the construction of a building is a contractor. This is precisely what First Hartford did with regard to the contracts at issue. The contracts very plainly state that First Hartford has supervisory responsibilities over the construction of the CVS buildings. Therefore, with regard to the construction of the Louisiana stores, First Hartford acted as a contractor, as that term is defined under Louisiana law. Thus, the contracts between Omega and First Hartford, with regard to the two Louisiana stores, are absolutely null under Louisiana law and Plaintiffs' contract claims with regard to the two Louisiana stores are dismissed with prejudice.

Defendants suggest that this is the end of the inquiry. Essentially, Defendants argue that, since the contracts are deemed never to have existed, they are entitled to keep the several million dollars which allegedly represents payments received under the contracts for work that was never completed. This is not the law. Louisiana Civil Code article 2033 describes the effects of an

absolutely null contract: "The parties must be restored to the situation that existed before the contract was made. If it is impossible or impracticable to make restoration in kind, it may be made through an award of damages." In the instant matter, assuming Plaintiffs are able to prove their allegations at trial, it is impossible to restore the parties to the situation that existed before the contract. The CVS stores which were the object of the contracts are completed and open for business. It is impossible to undo the construction work that occurred. Therefore, again assuming that Plaintiffs prevail at trial, Plaintiffs will be entitled to an award of damages. The Court recognizes that this is, essentially, an unjust enrichment remedy. However, this is consistent with the manner in which Louisiana state courts have handled similar cases. *See Hagberg v. John Bailey Contractor*, 435 So. 2d 580 (La. Ct. App. 3d 1983).

**D. Veil-Piercing**

Finally, Defendants argue that Plaintiffs have not produced evidence sufficient to warrant the piercing of Omega's corporate veil. Specifically, Defendants claim that the only veil piercing theory available to Plaintiffs under Texas law is actual fraud.[4] Defendants asserted the same arguments in a previous motion for summary judgment. The Court rejected those arguments and sees no reason to revisit that ruling.

---

[4] This Court has previously held that Texas law governs Plaintiffs' veil piercing claims.

## CONCLUSION

For the foregoing reasons, the Motions for Summary Judgment are GRANTED IN PART. Plaintiffs' breach of contract and intentional interference with contract claims, with regard to the Louisiana stores only, are DISMISSED WITH PREJUDICE. However, Plaintiffs are permitted to proceed with damages claims as to the two Louisiana stores. The Motions are DENIED in all other respects.

New Orleans, Louisiana, this 2nd day of April, 2014.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**